# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **RODNEY SCHMELZER, an individual,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**IHC HEALTH SERVICES, INC., dba PRIMARY CHILDREN'S HOSPITAL,**<br><br>**Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 2:19-cv-00965-TS-JCB**<br><br>**District Judge Ted Stewart**<br><br>**Magistrate Judge Jared C. Bennett** |

This case was referred to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(A).[1] On February 10, 2022, the court denied Plaintiff Rodney Schmelzer's ("Dr. Schmelzer") motion to compel.[2] In the process of deciding Dr. Schmelzer's motion, the court concluded that Dr. Schmelzer's discovery requests violated Fed. R. Civ. P. 26(g) and that the Rule 26(g) violation was not substantially justified. Thus, as a sanction upon the signer of the discovery requests, non-party Cohne Kinghorn, P.C. ("CK"), the court awarded Defendant IHC Health Services, Inc., dba Primary Children's Hospital ("PCH") the reasonable expenses and attorney fees incurred in filing its written response to Dr. Schmelzer's motion. Dr. Schmelzer and CK objected, appealing this court's ruling to District Judge Ted Stewart.

---

[1] ECF Nos. 3, 16.

[2] ECF No. 98.

This matter is before the court on the order of Judge Stewart, "recommitt[ing] the issue of sanctions to the Magistrate Judge for further proceedings to determine the requisite due process."[3] On May 4, 2022, the court held a status conference to discuss Judge Stewart's recommitment order and to set a schedule for supplemental briefing.[4] Having carefully considered Judge Stewart's order recommitting the issue of sanctions, the parties' written memoranda, and the applicable rules and legal standards, the court finds that CK's violation of Rule 26(g) was not substantially justified and, therefore, imposes the expenses, including attorney fees, that PCH incurred responding to Dr. Schmelzer's motion to compel as a sanction for the violation of Rule 26(g).

## BACKGROUND

Dr. Schmelzer filed this action asserting that PCH violated the False Claims Act by retaliating against him for engaging in protected activity.[5] Seeking to discover information related to his allegations of disparate treatment, Dr. Schmelzer prepared and served Interrogatory Nos. 17-22 and corresponding Request for Production Nos. 21-26. PCH objected to these discovery requests on the basis that they were overly broad and disproportionate to the needs of the case.[6]

---

[3] ECF No. 134 at 2.

[4] ECF No. 136.

[5] *See generally* ECF No. 2.

[6] PCH also objected to the discovery requests on the basis that they sought "protected peer review materials regarding unrelated members of PCH's medical staff" and, if answered, "would have a chilling effect on the free and candid discussions necessary for effective peer review and also force PCH to unnecessarily violate its contractual obligations to the members of its medical

The discovery requests at issue are directed at every member of PCH's medical staff since January 1, 2014, and seek all information that relates to or addresses behavioral concerns; clinical concerns; and Health Insurance Portability and Accountability Act ("HIPAA") concerns.[7] For example, with respect to "behavioral concerns," Interrogatory No. 17 states: "For the period of January 1, 2014 through present, identify each member of PCH's medical staff for whom PCH received any formal or informal complaint, request, suggestion, data, information, or report alleging disruptive behavior or other behavioral concerns."[8] Interrogatory No. 18 then seeks information identifying any "actions taken in response" to all of the identified behavioral concerns:

> For each member of PCH's medical staff identified in response to Interrogatory No. 17, identify all actions taken in response to those complaints, requests, suggestions, data, information, or reports alleging disruptive behavior or other behavioral concerns, including, but not limited to, any investigations, including, but not limited to those taken under Article XI of the Bylaws of the Medical Staff of PCH or the Policy on Discipline and Corrective Actions (Including the Fair Hearing Plan), or any other administrative investigation; any formal or informal counseling; any informal or formal corrective actions, including, but not limited to, those taken under Article XI of the Bylaws of the Medical Staff of PCH; any formal or informal administrative actions or the Policy on Discipline and Corrective Actions (Including the Fair Hearing Plan); any actions taken pursuant to Section 11.40 of the Bylaws of the Medical Staff

---

staff." ECF No. 83-5 at 3. PCH also asserted that the discovery requests sought information protected by the attorney-client privilege, the work-product doctrine, or a contractual privilege. *Id.* at 4.

[7] *See generally id.*

[8] *Id.* at 3.

3

of PCH; any voluntary practice plans; or any other disciplinary actions.[9]

Interrogatory No. 19 is phrased similarly but addresses "clinical" concerns. It seeks information relating to complaints, concerns, or allegations "regarding the medical staff member's clinical competence or practice, including, but not limited to, preoperative planning, adequacy of communication with medical staff members or patients regarding patient care or treatment, and/or surgical outcomes."[10] Interrogatory No. 20 then asks PCH to identify "all actions taken in response" to the clinical complaints identified.[11] Regarding HIPAA concerns, Interrogatory No. 21 requests, in pertinent part, information regarding any "formal or informal complaint . . . or report alleging inappropriate access to or use of patient records,"[12] and is followed by Interrogatory No. 22, asking PCH to identify "all actions taken in response" to all HIPAA concerns.[13]

After PCH objected to Dr. Schmelzer's discovery requests, the parties attempted to negotiate a resolution to the dispute by participating in discovery dispute resolution conferences

---

[9] *Id.* at 4; *see id.* at 20-22 (corresponding Request for Production Nos. 21-22 addressing behavioral concerns).

[10] *Id.* at 4-5.

[11] *Id.* at 5; *see id.* at 22-23 (corresponding Request for Production Nos. 23-24 addressing clinical complaints).

[12] *Id.* at 5.

[13] *Id.* at 5-6; *see id.* at 23 (corresponding Request for Production Nos. 25-26 addressing HIPAA concerns).

with the court that lasted several hours.[14] However, the parties were unable to reach an agreement, and on December 22, 2021, Dr. Schmelzer filed his motion to compel.[15]

By order dated February 10, 2022, the court denied Dr. Schmelzer's motion to compel.[16] The court found that Dr. Schmelzer's discovery requests failed to satisfy the requirements of Rule 26(b) and Fed. R. Civ. P. 34(b) to the point that the requests violated Rule 26(g). Having determined that the discovery requests violated Rule 26(g), the court went on to find that the violation was not substantially justified, and imposed sanctions against Dr. Schmelzer's counsel, CK. The court did not give CK an opportunity to be heard before imposing that sanction because Rule 26(g) did not require it even though other rules pertaining to sanctions do.[17]

Both Dr. Schmelzer and CK appealed this court's ruling to Judge Stewart. Dr. Schmelzer appealed this court's refusal to compel responses to his discovery requests,[18] and CK appealed this court's imposition of sanctions.[19] Judge Stewart overruled Dr. Schmelzer's objection stating that "the court cannot conclude that the Magistrate Judge's decision regarding the Motion to Compel was clearly erroneous or contrary to law."[20] Regarding CK's objection to sanctions, Judge Stewart first noted that the Supreme Court has recognized that "'[l]ike other sanctions,

---

[14] ECF Nos. 75, 77.

[15] ECF No. 83.

[16] ECF No. 98.

[17] *See, e.g.*, Fed. R. Civ. P. 37(a)(5).

[18] ECF No. 102.

[19] ECF No. 105.

[20] ECF No. 134 at 2.

attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record.'"[21] Then, quoting the advisory committee's note to the 1983 amendment of Rule 26, Judge Stewart explained that "Rule 26 provides that sanctions must comport with due process, but the 'kind of notice and hearing required will depend on the facts of the case and the severity of the sanction being considered.'"[22] Ultimately, "[b]ecause CK was not provided with adequate advanced notice that sanctions would be imposed," Judge Stewart "recommit[ted] the issue of sanctions to the Magistrate Judge for further proceedings to determine the requisite due process."[23]

After recommittal, this court held a status conference on May 4, 2022.[24] At the status conference, the parties and the court discussed the scope of Judge Stewart's recommitment order. After hearing argument from counsel, and carefully considering Judge Stewart's order, this court ruled that Judge Stewart's order affirmed this court's finding that CK violated Rule 26(g) and the only issue that was recommitted to this court was whether the Rule 26(g) violation was substantially justified.[25] The court then set a briefing schedule on the issue of substantial

---

[21] *Id.* (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)) (alteration in original).

[22] *Id.* (quoting Fed. R. Civ. P. 26 advisory committee's note to 1983 amendment).

[23] *Id.*

[24] ECF No. 136.

[25] ECF No. 143 at 10 ("I think [Judge Stewart] says, yeah, I agree there was [a violation of Rule 26(g)]. The question is whether it was substantially justified.").

justification to provide counsel with an opportunity to be heard on the recommitted issue of sanctions.[26]

Despite the court's ruling on the scope of Judge Stewart's order, and despite the court's instruction to "focus on substantial justification,"[27] CK's supplemental brief argued not only the issue of substantial justification, but also addressed whether there had been a violation of Rule 26(g) in the first instance. According to CK, because the violation of Rule 26(g) is a prerequisite to sanctions, the court must first determine whether CK violated the rule. Then, if the court finds that CK violated the rule, CK maintains that any violation was substantially justified.

Conversely, PCH argues that the only issue before the court is whether CK's violation of Rule 26(g) was substantially justified. And, as to that limited issue, PCH contends that CK's violation of Rule 26(g) was not substantially justified.

Although the court believed it had been clear in both its oral ruling on the scope of Judge Stewart's recommittal and its instructions for supplemental briefing, the court begins by addressing the scope of Judge Stewart's order recommitting the issue of sanctions. Next, the court discusses why CK's Rule 26(g) violation was not substantially justified. Finally, the court imposes a sanction of reasonable expenses and attorney fees for the memorandum that PCH had to file in response to Dr. Schmelzer's motion to compel.

---

[26] ECF No. 136.

[27] ECF No. 143 at 10.

## ANALYSIS

### I.     The Scope of Recommittal

At the status conference on May 4, 2022, this court ruled that Judge Stewart's order recommitting the issue of "sanctions" was limited to whether CK's violation of Rule 26(g) was substantially justified—not whether this court should reconsider its previous finding that CK violated Rule 26(g) in the first place. After considering CK's briefing, the court's interpretation of Judge Stewart's recommittal order remains unchanged.

When construing a district court's order recommitting an issue to the Magistrate Judge, the court applies the same standards that govern the scope of a mandate from an appellate court. Subject to considerations that are not at issue here, "when an appellate court issues a specific mandate it is not subject to interpretation; the district court has an obligation to carry out the order."[28] Indeed, "[t]he trial court must implement both the letter and the spirit of the mandate . . . taking into account the appellate court's opinion . . . and the circumstances it embraces."[29] "Because [a] mandate may be vague or precise depending on the issues presented, where a mandate's scope is contested [the court] must determine the scope of the issues considered in [the prior] appeal."[30]

---

[28] *Cox Enters., Inc. v. News-J. Corp.*, 794 F.3d 1259, 1271 (11th Cir. 2015) (quotations, citation, and footnote omitted).

[29] *Id.* (second and third alterations in original) (quotations, citation, and footnote omitted).

[30] *Id.* at 1271-72 (first and third alterations in original) (quotations, citation, and footnote omitted).

On February 10, 2022, as set forth above, this court issued its ruling on Dr. Schmelzer's motion to compel.[31] Shortly thereafter, Dr. Schmelzer appealed this court's refusal to compel discovery responses to his overbroad requests,[32] and CK appealed this court's imposition of sanctions under Rule 26(g).[33] In contesting this court's sanctions order, CK made the following arguments: (1) the motion to compel was well taken; (2) the imposition of sanctions violated due process by not giving CK an opportunity to be heard; and (3)(a) the imposition of sanctions failed to appropriately consider whether CK's certification violated Rule 26(g), (b) the sanctions order erroneously concluded that the certification violated Rule 26(g), and (c) the court's finding that CK's violation of Rule 26(g) was not substantially justified was clearly erroneous and contrary to law (which incorporated Dr. Schmelzer's arguments as to why the motion to compel was well taken).

However, of these myriad claims, Judge Stewart recommitted only one: the imposition of sanctions. That Judge Stewart's recommittal expressly states that it was limited to "sanctions" is significant because whether a party has *violated* Rule 26(g), and whether *sanctions* are warranted for a Rule 26(g) violation, are two distinct inquiries. Indeed, Rule 26(g)(3) does not say, "If a certification violates this rule, the court must impose an appropriate sanction."  Instead, Rule 26(g)(3) states: "If a certification violates this rule *without substantial justification*, the court, on

---

[31] ECF No. 98.

[32] ECF No. 102.

[33] ECF No. 105.

motion or on its own, must impose an appropriate sanction . . . ."[34] Thus, if Judge Stewart

intended to recommit to this court whether CK *violated* Rule 26(g) and, if so, whether the

violation warranted *sanctions*, then Judge Stewart easily could have so stated. However, the

recommittal was limited to the process required for the sanction this court could impose—a

sanction that was permissible only because this court had previously found that CK violated Rule

26(g). Therefore, the court considers below whether a sanction is appropriate for the violation of

Rule 26(g).

## II.  Sanctions Are Appropriate Because the Rule 26(g) Violation Was Not Substantially Justified

Sanctions are appropriate when violations of Rule 26(g) are not substantially justified.[35]

"Substantially justified" is a familiar phrase to those who have worked with the Equal Access to

Justice Act ("EAJA"). The court borrows from authorities interpreting the substantial

justification provisions of the EAJA because where, as here, the EAJA and Rule 26(g)(3) both

employ substantial justification for the same purpose (i.e., to compensate a party that had to

defend against unreasonable legal and factual arguments), courts interpret that shared language

consistently across different statutes.[36] Under the EAJA, "substantially justified" means

---

[34] Fed. R. Civ. P. 26(g)(3) (emphasis added).

[35] *Id*.

[36] *Lawson v. FMR LLC*, 571 U.S. 429, 459 (2014) ("[P]arallel text and purposes counsel in favor of interpreting . . . provisions consistently."); *Northcross v. Bd. of Educ. of Memphis City Schs.*, 412 U.S. 427, 428 (1973) (per curiam) (stating that when two provisions of different statutes share similar language, that is a "strong indication" they are to be interpreted consistently); *Morissette v. United States*, 342 U.S. 246, 263 (1952) (explaining that "where Congress borrows terms of art," it also borrows their meaning).

"'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person."[37] In other words, in order to be substantially justified, a party's position must be "more than merely undeserving of sanctions for frivolousness" and must instead have "'a reasonable basis in law and fact.'"[38] The purpose of the substantially justified inquiry is not "to relitigate issues that have already been decided."[39] And, therefore, substantial justification is not determined by the success or failure of Dr. Schmelzer's underlying motion. Instead, in assessing the justification of CK's position, courts consider the clarity of the governing law, that is, whether "judicial decisions on the issue left the status of the law unsettled,"[40] and whether the legal issue was novel or difficult.[41] "Put another way, substantially justified means there is a dispute over which reasonable minds could differ."[42] Applying these principles, the court finds that reasonable minds could not differ as to the appropriateness of the certification of Dr. Schmelzer's discovery requests. More specifically, there can be no genuine dispute that Dr.

---

[37] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[38] *Id.* at 565-66.

[39] *Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*, 799 F. Supp. 148, 152 (D.D.C. 1992). For these reasons, the court declines CK's invitation to rule that Dr. Schmelzer's original motion to compel was well taken especially where both this court and Judge Stewart previously rejected that argument.

[40] *Nalle v. Comm'r of Internal Revenue*, 55 F.3d 189, 192 (5th Cir. 1995).

[41] *Id.*; *see also Schock v. United States*, 254 F.3d 1, 6 (1st Cir. 2001) ("When the issue is a novel one on which there is little precedent, courts have been reluctant to find the government's position was not substantially justified.").

[42] *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005) (quotations and citation omitted).

Schmelzer's discovery requests were overly broad, unduly burdensome, and disproportionate to the needs of the case.

The Federal Rules of Civil Procedure permit Dr. Schmelzer to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[43] The 2015 amendments to the Rules were designed to: (1) "require tailoring based on the particular issues and circumstances in the case," and (2) "stop counsel from relying on standard, overbroad requests."[44] The discovery requests at issue here were objectively unreasonable on both accounts.

First, it was objectively unreasonable for CK to fail to narrow or tailor the requests according to the claims and circumstances in this case. CK confirms that the discovery requests at issue here were "designed to obtain disparate treatment evidence."[45] More specifically, Dr. Schmelzer is seeking information to show that the non-retaliatory reason offered by PCH for the adverse employment action against him was pretextual. The parties agree that one way a plaintiff can "show pretext on a theory of disparate treatment [is] by providing evidence that he was treated differently from other similarly situated, nonprotected employees who violated work rules of comparable seriousness."[46]

---

[43] Fed. R. Civ. P. 26(b)(1).

[44] *Michael Kors, L.L.C. v. Su Yan Ye*, No. 1:18-v-2684, 2019 WL 1517552, at *3 (S.D.N.Y. Apr. 8, 2019).

[45] ECF No. 137 at 3 of 7; *see also* ECF No. 83 at 3.

[46] *Kendrick v. Penske Transp. Servs. Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000).

The legal standards for showing pretext via similarly situated individuals are well established. Dr. Schmelzer recited the relevant legal standard and controlling cases in his motion to compel[47] and the court reiterated those principles in its February 10, 2022 order denying the motion.[48] In sum, to be "similarly situated," two individuals must be "similarly situated . . . in all relevant respects."[49] It typically requires a showing that the individuals "deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."[50] Where decisions are made by a group of individuals, "absolute congruence" is not necessary.[51] However, courts generally require some overlap among decision maker groups.[52] Likewise, a comparison should be made between the "relevant employment circumstances, such as work history and company policies."[53] In the field of medicine, courts tasked with determining whether certain physicians are similarly situated have recognized that physicians have varying responsibilities (i.e., teaching, supervising) and perform different procedures.[54]

---

[47] ECF No. 83 at 4-5.

[48] ECF No. 98 at 5-7.

[49] *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006).

[50] *Id.* (quotations and citation omitted).

[51] *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 541 (10th Cir. 2014).

[52] *Id.*

[53] *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997); *see also McGowan*, 472 F.3d at 745. Accordingly, courts may consider a variety of factors such as experience, specialized areas of practice, education, and qualifications. *See, e.g., Bernales v. Cnty. of Cook*, 37 F. App'x 792, 797 (7th Cir. 2002).

[54] *See, e.g., Bastidas v. Good Samaritan Hosp., L.P.*, 774 F. App'x 361, 363-64 (9th Cir. 2019).

Accordingly, courts have also considered factors such as experience, specialized areas of practice, education, and qualifications.[55] Additionally, to be similarly situated, individuals must have been "disciplined for conduct of comparable seriousness."[56] This requires the consideration of both the quantity and the quality of the offenses.[57] Despite these well-established principles, the requests were not tailored to the claims and facts in this case.

CK contends that it "lacked any information to further narrow the scope of potential differentiators."[58] While recognizing that CK may have lacked information in areas such as the peer review process, CK was not entirely without facts that could have narrowed the overly broad requests. For example, at the time of CK's Rule 26(g) certification, CK knew that Dr. Schmelzer was a physician. More specifically, CK knew that Dr. Schmelzer was a surgeon who was highly educated, trained in the field of craniofacial plastic surgery, and specialized in cleft lip and palate plastic reconstructive surgery on children.[59] CK also knew that Dr. Schmelzer had been member of the PCH medical staff for approximately eight years.[60] Additionally, CK knew that Dr. Schmelzer had received multiple complaints of clinical, behavioral, and improper access

---

[55] *See, e.g., Bernales*, 37 F. App'x at 797.

[56] *McGowan*, 472 F.3d at 745 (quotations and citation omitted).

[57] *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1121 (10th Cir. 2007).

[58] ECF No. 137 at 4 of 7.

[59] *See generally* ECF No. 2.

[60] *See generally id*.

issues, and that the decision to revoke his privileges was based on a combination of multiple issues in each of the foregoing areas.[61]

Despite familiarity with the relevant legal principles and facts of this case, CK made no attempt to limit the scope of the requested information to individuals—physicians—who might be similarly situated. Instead, the broadly worded requests sought information regarding every member of the medical staff,[62] who currently has privileges at PCH, or had privileges at PCH at any time during the past eight years, regardless of their particular job, medical specialty, education, or responsibilities, for whom PCH received _any formal or informal_ "complaint, request, suggestion, data, information, or report" alleging _any_ behavioral, clinical, or HIPAA issues or concerns, despite the frequency, volume, or severity of the staff member's issues. The breadth of the subject matter covered by this single request borders on inconceivable.

To make matters worse, the overbroad subject matter covered by CK's discovery requests was compounded by the all-encompassing language of the requests. Dr. Schmelzer's discovery requests repeatedly use omnibus terms such as "all documents," "correspondence of any kind," "related to," "including but not limited to," and "regarding any" followed by a long series of requested items. CK's unrestrained use of such omnibus terms oppressively fails to meet the

---

[61] _See, e.g._, ECF No. 13-4; _see also_ ECF Nos. 83-2, 83-3.

[62] Although CK discusses the requests as though they seek information limited to physicians, _see, e.g._, ECF No. 137-1 at 2 (contending that "[t]he Discovery Requests seek information . . . related to other complaints . . . that [PCH] received for other member _physicians_ based on the same types of conduct") (emphasis added)), the actual wording calls for information concerning "all medical staff." Medical staff is generally understood to include all individuals who are licensed in a particular state to provide healthcare services. Therefore, in addition to physicians, this may include, among others, registered nurses, nurse practitioners, physician assistants, physical therapists, occupational therapists, dieticians, and social workers.

"reasonable particularity" requirement of Rule 34.[63] On this subject the Tenth Circuit has instructed:

> Under our rules, parties to civil litigation are given broad discovery privileges. But with those privileges come certain modest obligations, one of which is the duty to state discovery requests with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A). All-encompassing demands of this kind take little account of that responsibility. Though what qualifies as "reasonabl[y] particular" surely depends at least in part on the circumstances of each case, a discovery request should be sufficiently definite and limited in scope that it can be said "to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced."[64]

CK's certified discovery requests potentially sweep in an astounding amount of paper documents, voice mail messages, texts, and emails that may "relate to" or "regard" the requested topics but have nothing to do with the claims or defenses in this action. The insurmountable burden created by these requests is precisely what the "reasonable particularity" requirement was designed to protect against.

Despite the foregoing, CK contends that Tenth Circuit cases such as *Ibrahim v. Alliance for Sustainable Energy, LLC*[65] cause reasonable minds to differ as to the court's interpretation of the "similarly situated" requirement.[66] CK maintains that *Ibrahim* supports their legal position

---

[63] *Reagan-Toughy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008); *see* Fed. R. Civ. P. 34(b)(1)(A) (requiring parties to draft document requests by describing "with reasonable particularity each item or category of items to be inspected").

[64] *Reagan-Toughy,* 526 F.3d at 649-50 (alterations in original) (citation omitted).

[65] 994 F.3d 1193 (10th Cir. 2021).

[66] ECF No. 139 at 5 of 7. CK correctly asserts that the court's review of CK's Rule 26(g) certification "must be tested at the time the certification is made, without hindsight bias." *Id.* at 6

vis-à-vis the breadth of their discovery requests and, therefore, reasonable minds could agree with CK's decision to not tailor or narrow the requests. However, *Ibrahim* actually confirms the court's position. In *Ibrahim*, when discussing the different aspects of the similarly situated inquiry, the Tenth Circuit found relevant: (1) whether the decisionmakers who made the adverse employment determination for the plaintiff and any comparator were the same; (2) whether the policies allegedly violated were the same between the plaintiff and any comparators; (3) whether the conduct resulting in the alleged violations was the same between comparators; and (4) whether the plaintiff's and comparator's job responsibilities and qualifications were similar, while recognizing that job titles need not be.[67]

      For illustrative purposes, contrast the limitations in *Ibrahim*—all of which the Tenth Circuit found to be part of the similarly situated inquiry—with CK's Interrogatory No. 17: "For the period of January 1, 2014 through present, identify each member of PCH's medical staff for whom PCH received any formal or informal complaint, request, suggestion, data, information, or report alleging disruptive behavior or other behavioral concerns."[68] This interrogatory is not tailored to similar decisionmakers, policies, job responsibilities, or qualifications. Additionally, by seeking "any formal or informal complaint, suggestion, data, information or report alleging

---

of 7. Ironically, however, to justify its position that reasonable minds could agree with CK's decision to not limit the requests, CK relies heavily on *Ibrahim*, a case decided several months *after* CK certified its discovery request. Despite this temporal problem, the court has considered all the cases in CK's memoranda and concludes that they do not create a doubt sufficient for reasonable minds to differ on the overbreadth of CK's discovery requests.

[67] *Ibrahim,* 994 F.3d at 1197-98.

[68] ECF No. 83-5 at 3.

disruptive behavior *or other behavioral concerns*,"[69] the interrogatory far exceeds the scope of similar conduct between Dr. Schmelzer and relevant comparators. Interrogatory 17 calls for potentially hundreds of entries, many of which will have no relevance to Dr. Schmelzer's situation and will include employees whose unspecified "behavioral concerns" occurred years *after* Dr. Schmelzer departed PCH.[70] Put simply, Interrogatory No. 17 is untethered from any of the moorings that *Ibrahim* found relevant to "similarly situated."

Then, instead of recognizing the burden imposed by its overbroad Interrogatory No. 17, CK doubles down by propounding Interrogatory No. 18. This interrogatory further increases the scope of the requested information as well as the burden on PCH by asking for "*all* actions taken in response to" *all* the people identified in Interrogatory No. 17, whether similar or not, "including, *but not limited to*," those actions taken under PCH's bylaws and policies, "any other administrative investigation," "any" formal or informal counseling and corrective action, or "any other disciplinary actions."[71] This breathtakingly broad interrogatory would require the reporting of anything ranging from surgical performance issues of a highly trained physician to a medical

---

[69] *Id.* (emphasis added).

[70] The personnel on the discipline board may be different from 2014 to the present, which calls into question whether the same people who made discipline decisions about Dr. Schmelzer also were on the board when others were disciplined during that same time frame. *Ibrahim*, 994 F.3d at 1197 (stating that a factfinder could find that the plaintiff was similarly situated to a comparator employee because, among other reasons, the plaintiff "presented evidence that the *same three individuals* had participated in the decisions to fire him and to issue only a warning to [the comparator]" (emphasis added)).

[71] ECF No. 83-5 at 4.

staff employee being informally talked to after carelessly leaving a dish from lunch in the common area sink.

Contrary to CK's repeated argument, the court is not imposing a summary judgment standard for similarly situated employees at the discovery stage of litigation. Instead of sanctioning CK by applying an arguably narrow summary judgment standard, the court finds that these discovery requests are not substantially justified because they fail to incorporate any standard at all. The Federal Rules of Civil Procedure and, consequently, the court simply expect parties to at least attempt to adhere to the standards of relevance and proportionality in discovery. In this case, those standards required that CK make at least some attempt to tailor the discovery requests to reflect the particular claims and circumstances of this case—which the discovery requests here certainly do not. Because reasonable minds could not dispute that CK's discovery requests were unnecessarily overbroad and unduly burdensome, the court concludes that CK's violation of Rule 26(g) was not substantially justified.[72]

---

[72] For additional authority demonstrating that CK's discovery approach in this action was not substantially justified, see the following: *Regan-Touhy*, 526 F.3d at 649-50 (discussed above); *Effyis, Inc. v. Kelly*, No. 18-13391, 2020 WL 4915559, at *1-2 (E.D. Mich. Aug. 21, 2020) (affirming sanctions for Rule 26(g) violation for document requests that were broad enough to seek "everything under the sky" (quotations and citation omitted)); *In re Milo's Kitchen Dog Treats Consol. Cases*, 307 F.R.D. 177, 179 (W.D. Pa. 2015) ("All-encompassing demands that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A)." (quotations and citations omitted)); *Bottoms v. Liberty Life Assur. Co.*, No. 11-cv-1606, 2011 WL 6181423, at *5-6 (D. Colo. Dec. 13, 2011) (finding that party violated Rule 26(g) where interrogatories and document requests sought that defendant "identify and describe each and every document that explains Liberty Life's procedure for choosing medical and other experts to participate in reviewing claims;" and for the "complete personnel files" for each person "who was in any way involved in the handling, processing or denial of Plaintiff's claim for benefits" (quotations and citations omitted)); *Leisure Hosp., Inc. v. Hunt Props., Inc.*, No. 09-cv-272, 2010 WL 3522444, at *3 (N.D. Okla. Sept. 8, 2010) ("Such 'omnibus' phrases as 'relating to,' 'referring to,' or 'concerning' have been held objectionable

### III.     Sanction of Reasonable Expenses and Attorney Fees Imposed

Having provided CK with a full and fair opportunity to brief the issue of sanctions, the court finds that CK has been afforded the due process contemplated by the rules, and, as explained in detail above, the court has concluded that CK's Rule 26(g) violation was not substantially justified. Consequently, the court "must" impose a sanction.[73]

The court does not take the imposition of sanctions lightly, especially when it involves attorneys who, like counsel in this case, are highly competent and skilled professionals. However, since 1983, the Federal Rules Committee has periodically added new provisions to the Federal Rules of Civil Procedure "'to deal with the problem of over-discovery.'"[74] The objective of these provisions is to "guard against redundant or disproportionate discovery . . . that may be directed to matters that are otherwise proper subject of inquiry."[75] For this reason, in 1993, the Federal Rules Committee enacted Rule 26(g), to separate it from Fed. R. Civ. P. 11's good faith

---

unless whatever follows that phrase is clearly and narrowly defined."); *Moses v. Halstead*, 236 F.R.D. 667, 672 (D. Kan. 2006) (finding that interrogatory or document request is overbroad if it: "(1) uses an omnibus term such as 'relating to or 'concerning,' and (2) applies to a general category or group of documents or a broad range of information"); *Harry A. v. Duncan*, 223 F.R.D. 536, 540 (D. Mont. 2004) (finding overly broad document requests seeking "any and all" documents related to "your education," "pertaining to your current employment," "sports or events in which you or any member of your family participated at any time from 1999-2003"); *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 538 & n.23 (D. Kan. 2003) (finding as overbroad requests using "the omnibus term 'relating to' or 'regarding' with respect to a general category or group of documents"); *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 197-98 (D. Kan. 1996) (stating that omnibus phrases "often require the answering party to engage in mental gymnastics to determine what information may or may not be remotely responsive").

[73] Fed. R. Civ. P. 26(g)(3).

[74] Fed. R. Civ. P. 26 advisory committee's note to 2015 amendments (quoting Fed. R. Civ. P. 26 advisory committee's note to 1983 amendment).

[75] *Id.*

requirements, and to impose a "substantially justified" standard when counsel certifies that their discovery requests comport with the principles of relevance and proportionality.[76] The 1993 amendments to Rule 26(g)(3) also instruct that a judge "*must* impose an appropriate sanction" when over-discovery is not substantially justified.[77] Therefore, and for the reasons stated, the court cannot look past CK's unjustifiably overbroad, unduly burdensome, and disproportionate discovery requests and refuse to impose a sanction.

Rule 26(g)(3) instructs that the sanction to be imposed "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Although the parties and the court devoted numerous hours attempting to mediate this discovery dispute, the court cannot and will not assess fees against any party for seeking to resolve discovery issues by seeking discovery mediation under DUCivR 37-1. Thus, the only expenses that the court can causally attribute to CK's violation of Rule 26(g) is the response to Dr. Schmelzer's motion to compel.[78] Accordingly, to avoid excessive fees and expenses, the court limits PCH to those reasonable

---

[76] Fed. R. Civ. P. 26 advisory committee's note to 1993 amendments; *compare* Fed. R. Civ. P. 11 (relying on "good faith" while omitting substantial justification standard), *with* Fed. R. Civ. P. 26(g) (omitting "good faith" standard in lieu of a substantial justification standard).

[77] Fed. R. Civ. P. 26(g)(3) (emphasis added).

[78] Similarly, under Rule 37(a)(5)(B), whenever a court denies a motion to compel, the court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees" unless the party's position in bringing the motion was "substantially justified." For the same reasons stated above, a motion that seeks to compel responses to overbroad discovery requests is likewise not substantially justified. Under either Rule 26(g)(3) or Rule 37(a)(5)(B), the sanction would be the same in this case.

expenses and attorney fees incurred in filing PCH's memorandum opposing Dr. Schmelzer's motion to compel.[79]

To determine the amount of reasonable expenses and attorney fees that PCH shall receive, PCH shall, within fourteen days of the date of this order, submit to CK an affidavit and cost memorandum detailing the reasonable expenses, including attorney fees, PCH incurred in responding to Dr. Schmelzer's motion to compel. The parties shall have fourteen days thereafter to attempt to stipulate to the amount of the award. If the parties can stipulate to the amount, CK shall pay the stipulated amount to PCH within fourteen days of the stipulation. If the parties are unable to stipulate to the amount, PCH shall promptly file its affidavit and cost memorandum with the court. CK will have seven days thereafter to file any response. Upon receipt of any such submissions, the court will determine the amount of the award of reasonable expenses and attorney fees.

IT IS SO ORDERED.

DATED this 4th day of August 2022.

BY THE COURT:

_____
JARED C. BENNETT
United States Magistrate Judge

---

[79] ECF No. 89.